**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| G.W. and K.W. individually and on behalf of M.W., a minor child,<br><br>*Plaintiffs,*<br><br>v.<br><br>RINGWOOD BOARD OF EDUCATION d/b/a RINGWOOD SCHOOL DISTRICT, NEW JERSEY DEPARTMENT OF EDUCATION, ANGELICA ALLEN-MCMILLAN, Acting Commissioner of Education, and the NEW JERSEY OFFICE OF ADMINISTRATIVE LAW,<br><br>*Defendants.* | Civil Action No. 21-cv-20657<br><br>**OPINION** |

**Evelyn Padin, U.S.D.J.**

This is a special education case brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* Presently before the Court is Plaintiffs' motion to dismiss all three counterclaims asserted by Defendant Ringwood Board of Education in its February 1, 2022 answer to Plaintiffs' December 22, 2021 complaint. The Court has reviewed the parties' submissions made in support and in opposition and has decided the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, Plaintiffs' motion is **GRANTED in part** and **DENIED in part**.

I.      **BACKGROUND**[1]

Defendant Ringwood Board of Education d/b/a Ringwood School District ("RBOE") is a public school system in Passaic County, New Jersey. D.E. 2 ¶ 11; D.E. 10 ¶ 11. M.W. is a student enrolled in the RBOE school district. D.E. 2 ¶ 10; D.E. 10 ¶ 10. Plaintiffs G.W. and K.W. are M.W.'s parents. D.E. 2 ¶ 11. M.W. was born in 2007, and transferred into RBOE in 2015. D.E. 2 ¶ 91; D.E. 10 ¶ 91. Upon transferring in, RBOE evaluated M.W. and concluded that he was eligible for special education and related services pursuant to IDEA. D.E. 2 ¶ 94; D.E. 10 ¶ 94. Individual education plans ("IEPs") were developed for M.W. for the 2015-16, 2016-17, and 2017-18 school years based on RBOE's initial evaluation of M.W. during the 2015-16 school year. D.E. 2 ¶¶ 95, 96; D.E. 10 ¶¶ 95, 96.

Plaintiffs have withheld their consent to allow RBOE to re-evaluate M.W. since 2016. D.E. 10 ¶ 94; *accord Ringwood Bd. of Educ. v. K.W. and G.W. o/b/o M.W.*, 3 OAL Dkt. No. EDS 02167-20, 2021 WL 8322401, at *1 (N.J. Adm. Sept. 24, 2021) ("The last [RBOE]-conducted evaluations of M.W., performed by professionals of the [RBOE's] choosing, were conducted during the 2015-2016 school year.").

---

[1] The facts are taken from Plaintiffs' complaint, D.E. 2, and RBOE's answer and counterclaims, D.E. 10. For purposes of resolving the present motion, "the Court accepts [the factual allegations in those pleadings] as true and draws all inferences in the light most favorable to the non-moving party." *Duke Univ. v. Akorn, Inc.*, No. 18-14035, 2019 WL 4410284, at *1 (D.N.J. Sept. 16, 2019) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008)). The Court also incorporates additional information set forth in the September 24, 2021 Final Decision issued by New Jersey Administrative Law Judge Jude-Anthony Tiscornia in *Ringwood Board of Education v. K.W. and G.W. on behalf of M.W.*, 3 OAL Dkt. No. EDS 02167-20, 2021 WL 8322401 (N.J. Adm. Sept. 24, 2021). This is the administrative law decision which Plaintiffs seek to overturn via the present lawsuit and expressly reference in their complaint. None of this additional information, moreover, is contrary to the factual allegations contained in Plaintiffs' and RBOE's respective pleadings.

On November 15, 2019, the parties appeared for a telephonic meeting discussing RBOE's plan to re-evaluate M.W. *Ringwood Bd. of Educ. v. K.W. and G.W.*, 2021 WL 8322401, at *1. During that meeting, RBOE proposed a specific re-evaluation plan for M.W. *Id*. In the subsequent months, RBOE sought to obtain consent from G.W. and K.W. to re-evaluate M.W. in accordance with the plan proposed on November 15, 2019. *Id*. G.W. and K.W. never provided any such consent and RBOE, in response, ultimately initiated an administrative action on or about January 13, 2020 requesting, *inter alia*, (1) a declaration that RBOE's proposed re-assessment plan for M.W. was appropriate; and (2) that G.W. and K.W. be required to provide their consent to have RBOE re-evaluate M.W. in the manner proposed by RBOE. D.E. 2 ¶ 103; D.E. 10 ¶ 103.

On September 24, 2021, administrative law judge ("ALJ") Jude-Anthony Tiscornia issued his Final Decision in that administrative matter. The pertinent portions of ALJ Tiscornia's decision follow:

> The parents[, G.W. and K.W.,] note that, while M.W. has not had any evaluation performed by a professional of [RBOE's] choosing since the 2015-2016 school year (as asserted by [RBOE]), M.W. has been evaluated during that time by various professionals of the parents' choosing. [RBOE] does not dispute that the parents have had their own evaluations done; rather, [RBOE] simply asserts that it has the right to perform its own under the law.
>
> The issue at the heart of this matter remains the parents' unwillingness to allow M.W. to be evaluated by [RBOE] and by professionals of [RBOE's] choosing. The parents do not dispute that they have withheld consent for [RBOE] to perform the evaluations, and they, in fact, admit in their opposition that they have not responded to [RBOE's] request to evaluate M.W. The parents make the distinction that, while they have certainly withheld consent to have [RBOE] perform its evaluations, they have never actually articulated a refusal. I CONCLUDE that this is an irrelevant distinction. Whether the parents withhold consent or actually say "no" to [RBOE's] request for consent, the relevant facts remain undisputed: [RBOE] needs the parents' consent to perform its evaluations on M.W.; [RBOE] has requested from the parents the prerequisite consent to perform the evaluations on M.W.; the parents

3

have not provided the prerequisite consent to have [RBOE's] evaluations performed; and the parents remain steadfast in their unwillingness to consent. . . .

. . . .

[RBOE] asserts that it has a legal right to evaluate M.W. I agree. Pursuant to N.J.A.C. 6A:14-3.8(a), the "school district is required to re-evaluate a classified student every three years to confirm the student's classification and the appropriateness of the student's program and placement." *Bordentown Reg'l Bd. of Educ. v. M.R. & M.R. ex rel. A.R.*, 2012 N.J. AGEN LEXIS 54 at *3. More specifically, "[w]ithin three years of the previous classification, a multi-disciplinary reevaluation shall be completed to determine whether the student continues to be a student with a disability." N.J.A.C. 6A:14-3.8(a).

[RBOE] further asserts that, prior to conducting any assessment as part of a reevaluation of a student with a disability, [it] must obtain consent from the parent. I agree. N.J.A.C. 6A:14-3.8(c) states: "Prior to conducting any assessment as part of a reevaluation of a student with a disability, the district board of education shall obtain consent from the parent pursuant to N.J.A.C. 6A:14-2.3." If a parent refuses to provide consent, the district may request a due-process hearing, as in the instant matter. *See* N.J.A.C. 6A:14-2.3(c), -2.7(b).

As noted above, the parents here are insisting that their own independent evaluations are sufficient for [RBOE] to rely on, and no further evaluations by [RBOE] are needed. I disagree. "Every court to consider the [IDEA's] reevaluation requirements has concluded if a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation." *M.S. v. Mullica Twp. Bd. of Educ.*, 485 F. Supp. 2d 555, 568 (D.N.J. 2007) (quoting *M.T.V. v. Dekalb Cty. Sch. Dist.*, 446 F.3d 1153, 1160 (11th Cir. 2006)); *see also Andress v. Cleveland Indep. Sch. Dist.*, 64 F.3d 176, 178-79 (5th Cir. 1995); *Johnson by Johnson v. Duneland Sch. Corp.*, 92 F.3d 554, 558 (7th Cir. 1996) ("because the school is required to provide the child with an education, it ought to have the right to conduct its own evaluation"); *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1315 (9th Cir. 1987) (holding that parents must permit mandatory reassessments under the Education of the Handicapped Act, the IDEA's predecessor, if they want their child to receive special-education services); *Dubois v. Conn. State Bd. of Educ.*, 727 F.2d 44, 48 (2d Cir. 1984) (same). Based on the foregoing, the

> parents' assertion that their independent evaluations of M.W. somehow negate the need for [RBOE] to perform its own evaluations is unfounded.
>
> Furthermore, New Jersey's regulations provide that a parent who refuses to consent to services cannot later argue that the district failed to provide a free appropriate public education ("FAPE"). N.J.A.C. 6A:14-2.3(c), -2.3(e)(4). Thus, "a parent cannot refuse to allow the school district to offer a FAPE, and later seek reimbursement for a unilateral placement, predicated on the school district's failure to offer a FAPE. N.J.A.C. 6A:14-2.3(c); N.J.A.C. 6A:14-2.3(e)(4)." *S.W. & J.W. ex rel. W.W. v. Florham Park Bd. of Educ.*, 2015 N.J. AGEN LEXIS 384 at *71.
>
> In the instant matter, it is undisputed that the parents of M.W. are withholding consent for [RBOE] to perform its evaluations. [RBOE], thus, seeks an order requiring the parents to sign the consent form, or, in the alternative, an order reflecting that the parents have been deemed to have waived their rights to later allege that [RBOE's] placement and program for M.W. failed to provide a FAPE at any time after November 27, 2019 (the date on which the parents were first provided with the consent form at the heart of this matter, which they have since failed to sign and return). . . .
>
> Based upon the foregoing, it is ORDERED that, as long as [G.W. and K.W.] continue to withhold consent to allow [RBOE] to perform its evaluations on M.W., the parents, K.W. and G.W., will have waived their rights to challenge [RBOE's] placement and programing for M.W., or otherwise allege that [RBOE's] placement and programing for M.W. failed to provide a FAPE at any time after November 27, 2019.

*Ringwood Bd. of Educ. v. K.W. and G.W.*, 2021 WL 8322401, at *2.

ALJ Tiscornia made clear that his "decision was final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 CFR § 300.514," and further that it could be appealed by "filing a complaint and bringing a civil action in . . . a district court of the United States." *Id.* at *2 (citing 20 U.S.C. § 1415(i)(2), 34 CFR § 300.516).

Plaintiffs, in response, filed a 13-count complaint on December 22, 2021, which requests, *inter alia*, that this Court overturn and/or vacate ALJ Tiscornia's September 24, 2021 Final

5

Decision based on various legal and procedural errors which were purportedly committed in that administrative matter. D.E. 2. Plaintiffs also allege that a multitude of systemic violations with respect to the timely administration of special education cases before the New Jersey administrative courts generally, and in their matter, specifically, likewise entitle them to relief from this Court. *Id.* Plaintiffs' complaint names as defendants RBOE, the New Jersey Department of Education ("NJDOE"), NJDOE's acting commissioner, Angelica Allen-McMillan, and the New Jersey Office of Administrative Law ("NJOAL"). *Id.*

On February 2, 2022, RBOE responded to Plaintiffs' complaint via the filing of its answer and counterclaims.[2] D.E. 10. RBOE's responsive pleading specifically alleges, *inter alia*, that RBOE is required to perform a multi-disciplinary re-evaluation within three years of a student's previous classification to maintain relevant evaluation data and determine continued eligibility for special education and related services, and that because Plaintiffs have continually refused consent to allow RBOE to re-evaluate M.W., RBOE has been, and continues to be, deprived of the information needed to properly formulate and deliver a program which is tailored to M.W.'s specific educational needs. *Id.* ¶ 375 (*citing* 20 U.S.C. § 1414(a)(2)(B)(ii); N.J.A.C. 6:14-3.8); *id.* ¶ 376. RBOE further avers that Plaintiffs have, since 2017, engaged in a campaign of bad faith conduct against it; Plaintiffs have harassed RBOE staff members, refused to cooperate in the development of M.W.'s IEPs, and filed numerous unmeritorious complaints with various courts, administrative agencies, and the NJDOE. *Id.* ¶ 380. RBOE details 30 separate proceedings that Plaintiffs have initiated or continued against RBOE and its employees. *Id.* ¶ 384.

---

[2] At this time, RBOE is the only defendant who has formally responded to Plaintiffs' complaint, *i.e.*, no other named defendant has yet filed an answer or other responsive pleading in this matter.

RBOE's pleading asserts three formal counterclaims against Plaintiffs: Count One – Plaintiffs Failed to Cooperate in Good Faith with RBOE's Child Study Team to Develop M.W.'s IEPs, *id*. ¶¶ 385-390; Count Two – Matter Brought for Undue Reasons, *id*. ¶¶ 391-399; and Count Three – Improper Joinder, *id*. ¶¶ 400-405.  RBOE's answer also contains a number of affirmative defenses, including, *inter alia*, that Plaintiffs' claims: (1) are brought in bad faith and for the improper purpose of harassment or increasing the cost of litigation, D.E. 10 ¶ 357; and (2) should be dismissed for Plaintiffs' failure to participate and/ or cooperate in good faith with RBOE, as required under law, D.E. 10 ¶ 358.

On March 6, 2022, Plaintiffs filed the present motion to dismiss all three counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.E. 14.  Plaintiffs have not moved to strike any of RBOE's affirmative defenses, and their motion does not seek relief under any other provision within the Federal Rules of Civil Procedure.  *Id*.  RBOE filed its opposition to Plaintiffs' Rule 12(b)(6) motion on March 21, 2022.  D.E. 15.  And Plaintiffs filed their reply on March 28, 2022.  D.E. 18.

## II.   STANDARD OF REVIEW

### A.  Motion to Dismiss Counterclaims

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012).  Under this standard, the counterclaim must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  In evaluating the sufficiency of a counterclaim, the court must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  A court will, however, accept the counterclaim's well-pleaded facts as true.  *Fowler*, 578 F.3d at 210.  Moreover, a district court must draw all reasonable inferences from the well-pleaded facts in favor of the counterclaimant.  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

On a Rule 12(b)(6) motion to dismiss, a district court may not rely on matters extraneous to the pleading sought to be dismissed.  Fed. R. Civ. P. 12(d).  A motion to dismiss a counterclaim must be decided "on the face of the counterclaim."  *Lukoil N. Am. LLC v. Turnersville Petroleum Inc.*, 2015 WL 5455648, at *1 (D.N.J. Sept. 16, 2015).  However, in certain circumstances, a court may also consider undisputed and authentic exhibits, as well as matters of public record.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).

As noted, Plaintiffs are moving under Rule 12(b)(6) only and are not requesting that the Court strike any of RBOE's affirmative defenses.  That said, it bears noting that, in addition to the foregoing standard governing Plaintiffs' Rule 12(b)(6) motion to dismiss, Rule 12(f) of the Federal Rules of Civil Procedure sets forth two standards for striking matter from a pleading: (1) "an insufficient defense," or (2) "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "An affirmative defense is insufficient if 'it is not recognized as a defense to the cause of action.'"  *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *2 (D.N.J. Mar. 10, 2011) (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J.1993)).  A motion to strike an affirmative defense "will only be granted 'when a defense is

8

legally insufficient under any set of facts which may be inferred from the allegations of the pleading.'" *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 120 (D.N.J. 1994) (quoting *Glenside West Corp. v. Exxon Corp.*, 761 F. Supp. 1100, 1115 (D.N.J.1991)). "As a general matter, motions to strike under Rule 12(f) are highly disfavored." *Thompson v. Real Estate Mortg. Network, Inc.*, No. 11-1494, 2018 WL 4604310, at *2 (D.N.J. Sept. 24, 2018) (citing *F.T.C.*, 2011 WL 883202, at *1).

### III.  ANALYSIS

As noted, the three counterclaims asserted by RBOE are as follows:  Count One – Plaintiffs Failed to Cooperate in Good Faith with RBOE's Child Study Team to Develop M.W.'s IEPs; Count Two – Matter Brought for Undue Reasons; and Count Three – Improper Joinder.  D.E. 10. Plaintiffs claim that dismissal of all three counterclaims is appropriate because "none of the claims are recognized affirmative claims but rather, at best, affirmative defenses."  D.E. 14.  Plaintiffs do not further distinguish between affirmative claims and affirmative defenses nor otherwise provide meaningful insight as to why that distinction is critical for purposes of ruling on their motion, which, again, seeks relief solely under Rule 12(b)(6).  RBOE's opposition likewise fails to meaningfully distinguish between affirmative claims and affirmative defenses; RBOE instead argues, in circular fashion, that "Plaintiffs' motion to dismiss should be denied in its entirety because each of [RBOE's] claims states a plausible claim upon which relief can be granted."  D.E. 15 at 3.

For purposes of resolving the present Rule 12(b)(6) motion, the Court's determination on whether each of RBOE's counterclaims is an affirmative claim or an affirmative defense is indeed critical.  This Court, in resolving this issue, asks one question:  If Plaintiffs' entire complaint were dismissed, would any of RBOE's three "counterclaims" against Plaintiff continue as an

independently viable cause of action that keeps this matter open? If the answer is no, then that "counterclaim" is merely an affirmative defense and dismissal under Rule 12(b)(6) is appropriate. *See Affirmative Defense*, Black's Law Dictionary (11th ed. 2019) (defining affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim").

If, on the other hand, the answer is yes, that upon the hypothetical dismissal of Plaintiffs' complaint in its entirety, RBOE's counterclaims would still remain as viable, independent causes of action against Plaintiffs, then further Rule 12(b)(6) analysis is required. *See* Fed. R. Civ. P. 13(c) ("A counterclaim need not diminish or defeat the recovery sought by the opposing party. It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party."); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when [it] allows the court to draw the reasonable inference that the defendant *is liable* for the misconduct alleged.") (emphasis added).

Under this test, the Court finds that dismissal of Counterclaims One and Three is appropriate. As to Counterclaim One, *i.e.*, that Plaintiffs failed to cooperate in good faith with RBOE's child study team to develop M.W.'s IEPs, the Court agrees with Plaintiffs that it "is a defense, not a counterclaim." D.E. 14-1 at 5. RBOE's opposition papers confirm that Counterclaim One is an affirmative defense only, and that there is no affirmative relief that can be awarded upon a finding by this Court that Plaintiffs have, since 2016, failed to cooperate in good faith with RBOE to develop IEPs for M.W.: "[Counterclaim One] states facts which, if accepted as true, entitles [RBOE] to an order dictating Plaintiffs have shed their right to allege [that RBOE] has failed to provide a FAPE." D.E. 15 at 3-4. RBOE's additional assertion that the relief this "counterclaim seeks [is] an order holding Plaintiffs waive their right to allege denial of a FAPE until they consent to [RBOE-]performed evaluations," *see id.* at 4, likewise bolsters the conclusion

that Counterclaim One is merely an affirmative defense. Because Counterclaim One therefore fails to state an independently viable cause of action against Plaintiffs, the Court will dismiss it pursuant to Rule 12(b)(6). The Court notes that RBOE has also separately pled this claim as an affirmative defense, *see* D.E. 10 ¶ 358, and that the issue of Plaintiffs' purported failure to cooperate in good faith with RBOE's child study team is still very much before the Court.

Counterclaim Three, improper joinder, will also be dismissed. RBOE, by way of that "counterclaim," avers that it has been improperly identified as a defendant in certain claims within Plaintiffs' complaint that actually pertain exclusively to the other defendants identified therein, *i.e.*, NJDOE, NJDOE's acting commissioner, Angelica Allen-McMillan, and the NJOAL. This assertion, however, is not an affirmative claim that would remain independently viable against Plaintiffs upon the hypothetical dismissal of their entire pleading. That said, while Counterclaim Three will be dismissed pursuant to Rule 12(b)(6), the issue of improper joinder also remains in play in this case. *See* Fed. R. Civ. P. 26 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

The Court will not, however, dismiss Counterclaim Two, *i.e.*, that Plaintiffs have brought this matter for undue reasons. Here, RBOE avers that Plaintiff have, since 2017, engaged in a campaign of bad faith conduct against it. RBOE's answer specifically alleges that Plaintiffs have harassed staff members, refused to cooperate in the development of M.W.'s IEPs, and filed numerous unmeritorious complaints with various courts, administrative agencies, and the New Jersey Department of Education. D.E. 10 ¶ 380. RBOE, in support of that claim, lists 30 separate proceedings that Plaintiffs have initiated or continued against RBOE and its employees. D.E. 10 ¶ 384.

RBOE's pleading also astutely notes that it was the prevailing party in the underlying administrative proceeding being challenged by Plaintiffs in the present lawsuit, and that under IDEA, it would be entitled to collect attorney's fees: (1) "against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation;" and/or (2) "against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation." D.E. 10 ¶¶ 378, 379; *accord* 20 U.S.C. § 1415(i)(3)(B)(i)(II), (III). More importantly, it appears, that under this plain statutory language, RBOE's right to pursue such fees would remain independently viable even if Plaintiffs voluntarily dismissed their entire complaint tomorrow. Counterclaim Two, in short, asserts an affirmative claim against Plaintiffs.

RBOE's answer also contains sufficient facts that allow the Court to reasonably infer that the present matter could potentially have been brought for "undue reasons." The claim, in other words, has facial plausibility. Thus, the Court will deny Plaintiffs' Rule 12(b)(6) motion to dismiss Counterclaim Two. The Court, in so doing, recognizes that Plaintiffs have the statutory right to appeal ALJ Tiscornia's Final Decision via the present action, and that it is presently making no findings on whether Plaintiffs have in fact brought this matter for an improper purpose. At this time, the Court simply finds that dismissal of RBOE's Counterclaim Two for failure to state a claim is inappropriate. Plaintiffs' motion to dismiss Counterclaim Two under Rule 12(b)(6) is accordingly denied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to dismiss the Counterclaims of RBOE is **GRANTED in part** and **DENIED in part**.  An appropriate Order accompanies this Opinion.

Dated:  September 9, 2022

/s/ Evelyn Padin<br>
Evelyn Padin, U.S.D.J.