NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| G.W. and K.W., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RINGWOOD BOARD OF EDUCATION, et al.,<br><br>Defendants. | Civil Action No. 21-20657<br><br>**OPINION**<br><br>April 29, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendants New Jersey Department of Education, Angelica Allen-McMillan, and New Jersey Office of Administrative Law's ("State Defendants") Motion to Dismiss Plaintiffs G.W., K.W., and M.W.'s ("Plaintiffs") Complaint (ECF 2, "Compl."), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). (ECF 66, "State Defs. MTD.") Ringwood Board of Education ("RBOE") also filed a Motion to Dismiss Plaintiffs' Complaint. (ECF 70, "RBOE MTD.") Plaintiff did not oppose either motion. (ECF 71; ECF 85.) The Court has decided both motions upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, State Defendants' Motion to Dismiss (ECF 66, State Defs. MTD) is **GRANTED** and RBOE's Motion to Dismiss (ECF 70, RBOE MTD) is **GRANTED**.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiffs G.W. and K.W. are the parents of M.W., a student with a disability. (ECF 2, Compl. ¶ 10.) Defendant RBOE is a public school system in Passaic County, New Jersey. (*Id*. ¶ 12.) M.W. is a student enrolled in the RBOE school district. (*Id.* ¶ 91.) M.W. transferred into RBOE in 2015. (*Id*.) RBOE proceeded to evaluate M.W. and concluded that he was eligible for special education and related services pursuant to IDEA. (*Id.* ¶ 94.) Individual education plans ("IEPs") were developed for M.W. for the 2015-16, 2016-17, and 2017-18 school years based on RBOE's initial evaluation of M.W. during the 2015-16 school year. (*Id*. ¶¶ 95-96.)

Plaintiffs have withheld their consent to allow RBOE to re-evaluate M.W. since 2016. (ECF 10 ¶ 94.) After RBOE's attempts to obtain consent from G.W. and K.W. to re-evaluate M.W., RBOE opted to initiate an administrative action on or about January 13, 2020 requesting, *inter alia*, (1) a declaration that RBOE's proposed re-assessment plan for M.W. was appropriate; and (2) that G.W. and K.W. be required to provide their consent to have RBOE re-evaluate M.W. in the manner proposed by RBOE. (ECF 2, Compl. ¶ 103; ECF 10 ¶ 103.)

On September 24, 2021, administrative law judge ("ALJ") Jude-Anthony Tiscornia issued his Final Decision in the administrative matter, ordering that:

> as long as [G.W. and K.W.] continue to withhold consent to allow [RBOE] to perform its evaluations on M.W., the parents, K.W. and G.W., will have waived their rights to challenge [RBOE's] placement and programming for M.W., or otherwise allege that [RBOE's] placement and programming for M.W. failed to provide a FAPE at any time after November 27, 2019.

*Ringwood Bd. of Educ. v. K.W. and G.W.,* OAL No. EDS 02167-20, 2021 WL 8322401, at *2 (N.J. Adm. Sept. 24, 2021). ALJ Tiscornia also made clear that his "decision was final pursuant to 20

---

[1] The facts and procedural history are drawn from the Complaint (ECF 2, Compl.), RBOE's answer and counterclaims (ECF 10), State Defendants' Motion to Dismiss (ECF 66, State Defs. MTD), RBOE's Motion to Dismiss (ECF 70, RBOE MTD), and documents integral to or relied upon by the FAC. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of the motion to dismiss, the facts are drawn from the Complaint and accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

U.S.C. § 1415(i)(1)(A) and 34 CFR § 300.514," and that it could be appealed by "filing a complaint and bringing a civil action . . . a district court of the United States." *Id.* at *2 (citing 20 U.S.C. § 1415(i)(2), 34 CFR § 300.516).

In response, Plaintiffs filed the instant action on December 22, 2021. (ECF 2, Compl.) The 13-count complaint requests that this Court overturn and/or vacate ALJ Tiscornia's September 24, 2021 Final Decision based on various legal and procedural errors which were purportedly committed in that administrative matter. (*Id.*) Plaintiffs also allege various systemic violations with respect to the timely administration of special education cases before New Jersey administrative courts generally that, in their case, specifically entitles them to relief from this Court. (*Id.*) Plaintiff's Complaint names RBOE, the New Jersey Department of Education ("NJDOE"), NJDOE's acting commissioner, Angelica Allen-McMillan, and the New Jersey Office of Administrative Law ("NJOAL"). (*Id.*) The counts in the Complaint are: Count I ("Appeal: Legal errors in DP case"); Count II ("Appeal: Procedural errors in DP case"); Count III (systemic violation of the 10-day peremptory hearing date); Count IV (systemic violation of the five-day exchange rule); Count V (systemic violation of the adjournment rule); Count VI (systemic violation of the discovery rules in special education due process cases); Count VII (systemic violation of hearing officer qualifications); Count VIII (systemic violation of the independence of the adjudicating body of special education disputes); Count IX (systemic violation of the 45-day rule); Count X (declaratory judgment: federal preemption); Count XI (RBOE's violations of Section 504); Count XII (RBOE's violations of the ADA); and Count XIII (RBOE's violations of the NJLAD). RBOE filed its answer and counterclaims on February 2, 2022. (ECF 10.) Plaintiffs filed a motion to dismiss RBOE's counterclaims on March 6, 2022. (ECF 14.) On September 9,

2022, Judge Padin entered an Opinion and Order dismissing two of RBOE's counterclaims and allowing Count II (that Plaintiffs brought this matter for undue reasons) to survive. (ECF 40, 41.)

On October 27, 2022, Magistrate Judge Allen's Opinion and Order permitted the withdrawal of Plaintiff's counsel. On June 16, 2023, Judge Padin affirmed Judge Allen's Order and ordered that:

> Plaintiffs shall have until August 31, 2023 for new substitute counsel to enter an appearance on their behalf, or Plaintiffs G.W. and K.W. shall be deemed to represent themselves *pro se* and Plaintiff M.W. will be deemed unrepresented by counsel because "parents may not represent their children in IDEA cases in federal court." *R.B.*, 532 F. App'x at 137 n.1.

(ECF 64 at 6.) Plaintiffs have since proceeded *pro se*.[2]

State Defendants subsequently filed their Motion to Dismiss on September 18, 2023. (ECF 66, State Defs. MTD.) RBOE filed its Motion to Dismiss on October 31, 2023. (ECF 70, RBOE MTD.) The Court instructed Plaintiffs to file their oppositions to both motions. (ECF 75, ECF 84.) Plaintiffs submitted letters indicating that they would not oppose either motion. (ECF 71; ECF 85.)

## II.   LEGAL STANDARD

Although Plaintiff did not file an opposition to the instant motion, "the Court must address unopposed motions to dismiss a complaint on the merits." *Wiggins v. String*, No. 12-3176, 2013 WL 1222676, at *2 (D.N.J. Mar. 25, 2013) (citation omitted). Generally, "the Court must address

---

[2] As in *H.D. v. West Orange Board of Education*, the Court will allow only Plaintiffs G.W. and K.W. to proceed *pro se* to vindicate their own rights under the IDEA because "parents undoubtedly have substantive rights under the IDEA that they may enforce by prosecuting claims brought under that statute on their own behalf." No. 19-18943, 2022 WL 92782, at *3 (quoting *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. of Educ.*, 587 F.3d 176, 183 (3d Cir. 2009) (citing *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (2007))). In *Winkelman*, the Supreme Court left open the question "whether [the] IDEA entitles parents to litigate their child's claims *pro se*." 550 U.S. at 535 (emphasis added). However, the Third Circuit has "answered that question in the negative." *See Chambers*, 587 F.3d at 183 n.9 (citing *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225 (3d Cir. 1998), *abrogated on other grounds by Winkelman*, 550 U.S. 516). Thus, to the extent Plaintiffs continue to pursue their claim on behalf of M.W., they do not have standing to do so, but they may pursue claims on their own behalf. *See R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 137 n.1 (3d Cir. 2013) ("Ms. Ballard is not permitted to represent R.B. because parents may not represent their children in IDEA cases in federal court."); *Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x 833, 836 n.2 (3d Cir. 2009) ("Because the Woodruffs are not attorneys, they may not represent B.W. on appeal. Therefore, they are proceeding on appeal only as to their claims." (internal citation omitted)).

4

unopposed motions to dismiss a complaint on the merits." *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 182 (D.N.J. 2012) (citation omitted); *see also Greene v. LexisNexis Risk Solutions Inc.*, No. 23-3107, 2024 WL 471573, at *1 (D.N.J. Feb. 7, 2024).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Rule 12(b)(1) governs the State Defendants' motion to the extent it challenges Plaintiffs' action on standing. *See J.A. v. Monroe Twp. Bd. of Educ.*, No. 20-09498, 2022 WL 970194, at *6 (D.N.J. March 31, 2022). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual challenge attacks the allegations underlying the complaint's assertion of jurisdiction, "either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

Motions to dismiss for lack of standing are best understood as facial attacks. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("Defendants' Rule 12(b)(1) motions are properly understood as facial attacks because they contend that the [a]mended [c]omplaints lack sufficient factual allegations to establish standing."). In assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1), courts must apply the familiar 12(b)(6) standard. *Id.* ("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim"); *see also Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.").

### III.   STATUTORY FRAMEWORK

Congress enacted the IDEA to, among other things, ensure "the rights of children with disabilities and parents of such children are protected[.]" 20 U.S.C. § 1400(d)(1)(A)-(B). The

IDEA requires that every child with a disability receive a free appropriate public education (a "FAPE") from their public school if that school receives federal funding under the IDEA. *Id.* at § 1412(a)(1)(A); 34 C.F.R. § 300.101(a). The term "free appropriate public education" means the provision of "special education and related services" that meet certain criteria. 20 U.S.C. § 1401(9). The IDEA also guarantees parents of disabled children a right to participate in the educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and that the rights of disabled students and their parents are not infringed, Congress enacted various "procedural safeguards" that participating public schools must comply with. *Id.* § 1412(6)(A); *id.* § 1415(a). One such procedural safeguard provides standards for adjudicating disputes about whether a school has adequately provided a FAPE. Per Congress' requirements, these disputes begin with the filing of a "due process petition" or "due process complaint." Either the public school or the child may file a due process complaint, and that complaint may seek relief with respect to "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* § 1415(b)(6).

The IDEA contemplates that it is the State Educational Agency that is responsible for making sure that there are fair and impartial procedures in place to handle any due process petition. *Id.* § 1415 (f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."); *id.* § 1415(e)(1) ("Any State educational agency or local educational agency that receives assistance

7

under this subchapter shall ensure that procedures are established and implemented to allow parties to disputes involving any matter.").

Once a due process complaint has been filed, Congress has set strict deadlines by which certain events must occur. *See id.* § 1415(f)(1)(B)(ii) (referencing timelines "applicable [to] a due process hearing"); 34 C.F.R. § 300.515(a) (setting forth a strict timeframe for due process petition resolution); N.J. Admin. Code § 6A:14-2.7(j) (same). These procedures are central to the instant matter.

Beginning with the date the due process complaint is filed, the parties have thirty days within which to settle or otherwise resolve the dispute to the satisfaction of the parent and child. *See* 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(b). This period is referred to as the "resolution period." If the case is not resolved during the resolution period, it may proceed to a hearing. Congress has called these "due process hearings."

In New Jersey, "[a] due process hearing is an administrative hearing conducted by an administrative law judge" in the OAL. N.J. Admin. Code § 6A:14-2.7(a). "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence" 20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b); see N.J. Admin. Code § 6A:14-2.7(j) ("A final decision shall be rendered by the administrative law judge . . . after the conclusion of the resolution period").

Once the 30-day resolution period ends, federal regulations require that due process petitions be decided by hearing officers within 45 days, unless either party requests specific adjournments. 34 C.F.R. § 300.515(a) (states receiving federal funding "must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b) . . . (1) A final decision

8

is reached in the hearing; and (2) A copy of the decision is mailed to each of the parties."). New Jersey's Administrative Code contains a similar requirement. N.J. Admin. Code § 6A:14-2.7(j) ("[a] final decision shall be rendered by the administrative law judge not later than 45 calendar days after the conclusion of the resolution period[.]").

Both federal and New Jersey State law permit "specific adjournments" to be granted "at the request of either party" which will effectively toll the 45-day period within which a decision must be entered. *See* N.J. Admin. Code § 6A:14-2.7(j) (45-day period may only be extended if "specific adjournments are granted by the administrative law judge in response to requests by either party to the dispute"); 34 C.F.R. § 300.515(c) ("[a] hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party."). No other delays are contemplated. Therefore, if no specific adjournments are requested by the parties, a final decision must be rendered within 45 days after the end of the 30-day resolution period. 34 C.F.R. § 300.515(a); N.J. Admin. Code § 6A:14-2.7(j). The Court refers to this requirement as the "45 Day Rule." The Court now turns to Plaintiffs' allegations.

## IV.　ANALYSIS

### A. Standing to Bring the IDEA Claims

Plaintiffs asserted that this Court has subject matter jurisdiction over their claims against State Defendants pursuant to federal question jurisdiction arising under the federal IDEA, 20 U.S.C. § 1415, *et seq.* (ECF 2, Compl. ¶ 3.) State Defendants argue that Plaintiffs lack standing under IDEA because they did not suffer an injury under the statute. (ECF 66, State Defs. MTD at 10-11.) They argue that Plaintiffs fail to establish that there was a loss of educational opportunity

for M.W., that G.W. and K.W. were deprived of their participation rights, and that a procedural violation of the IDEA caused a deprivation of educational benefits. (*Id.* at 11.)

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), the Supreme Court held that to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an injury-in-fact that is both concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). State Defendants focus primarily on the injury-in-fact element of the standing analysis.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. Therefore, to determine whether Plaintiffs have suffered injury-in-fact, the Court must assess whether Plaintiffs have sufficiently alleged facts that, if true, would prove Defendants violated the IDEA. *See id.*; *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 292 (3d Cir. 2005).

"[T]he Supreme Court has directed that a school district's liability for violations of the IDEA is a two-fold inquiry: (1) [h]as the school district complied with the procedures set forth in IDEA?; and (2) [h]as the school district fulfilled its obligation to provide the student with a FAPE?" *D.B. v. Gloucester Twp. Sch. Dist.*, 489 F. App'x 564, 566 (3d Cir. 2012) (quoting *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010)). Not every procedural violation of the IDEA constitutes denial of a FAPE: the Third Circuit has held that while "it is important that a school district comply with the IDEA's procedural requirements, rather than being a goal in itself, such compliance primarily is significant because of the requirements' impact on students'

and parents' substantive rights." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010). In other words, "[a] procedural violation constitutes a denial of a FAPE when that violation causes 'substantive harm' to the child or her parents." *D.B.*, 489 F. App'x at 566 (quoting *C.H.*, 606 F.3d at 66); *J.A. v. Monroe Twp. Bd. of Educ.*, No. 18-9580, 2019 WL 1760583, at *1 (D.N.J. Apr. 22, 2019) (citing *G.N. v. Board of Educ. of Twp. of Livingston*, 309 F. App'x 542, 546 (3d Cir. 2009)) (same). Further, this Court has previously held that "[v]iolations of procedural safeguards constitute a denial of FAPE if they have: (1) impeded the child's right to a FAPE; (2) significantly impeded a parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." *J.A.*, 2019 WL 1760583, at *1 (citing *G.N.*, 309 F. App'x at 546).

Here, Plaintiffs do no allege that they filed a due process petition on M.W.'s behalf. Rather, Plaintiffs appeal from a due process petition *filed by the district* seeking to compel Plaintiffs to provide the consent necessary to evaluate M.W. (ECF 2, Compl. ¶ 103.) As such, Plaintiffs are not positioned such that they sought change in M.W.'s placement or services as provided. Rather, they took no issue with the status quo of M.W.'s placement and services as demonstrated by their withholding of consent for re-evaluation of M.W. (*Id.* ¶ 102.) Accordingly, they do not allege an injury in violation of IDEA that affords them standing. Similarly, in *C.P. v. New Jersey Department of Education*, the Court determined that the E.M. family did not allege that they filed a due process petition on the child's behalf, nothing that "a viable plaintiff must have filed a due process petition in the first place, which was unduly delayed by the State. Because the E.M. [f]amily does not allege they filed such a petition, they lack standing and must be dismissed from this action." No. 19-12807, 2020 WL 2611572, at *9 (D.N.J. May 22, 2020). Here, as in *C.P.*, the Plaintiffs did not file a due process petition in the first instance — the school district filed the due

11

process petition. (ECF 2, Compl. ¶ 103.) Therefore, Plaintiffs lack standing to pursue their claims under IDEA. *See C.P.*, 2020 WL 26611572, at *9. The Court therefore dismisses all of Plaintiffs' claims premised on IDEA for lack of standing.[3]

### B. Violation of § 504, the ADA, and NJLAD

Plaintiffs also asserted claims under Section 504, the ADA, and NJLAD. (ECF 2, Compl. at 84-91.) RBOE argues that the *pro se* parents cannot litigate discrimination claims on behalf of their child as they have no standing. (ECF 70, RBOE MTD at 5-6.)

To state a claim of violation Title II of the ADA or § 504, "a plaintiff must show that he is a qualified individual with a disability; that he was excluded from a service, program, or activity of a public entity; and that he was excluded because of his disability." *Disability Rts. N.J., Inc. v. Comm'r, N.J. Dep't of Hum. Servs.*, 796 F.3d 293, 301 (3d Cir. 2015); *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019) (noting that the substantive standards for both claims are the same).

The New Jersey Supreme Court has recognized that, in certain situations, the NJLAD's protections apply to school settings. *See L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Educ.*, 915 A.2d 535, 540 (2007). To allege hostile learning environment based on disability, a student must show (1) "discriminatory conduct that would not have occurred 'but for' the student's [disability]," (2) "that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment," and (3) "that the school district failed to reasonably address such conduct." *Remphrey v. Cherry Hill Twp. Bd. of Educ.*, No. 16-3084, 2017 WL 253951, at *4 (D.N.J. Jan. 20, 2017) (citing *Toms River*, 915 A.2d at 547). A school district may

---

[3] Plaintiffs premise Counts I, II, III, IV, V, VI, VII, VIII, IX, and X on IDEA. The Court accordingly dismisses each of those counts against all alleged defendants.

12

be "liable for such harassment when the school district knew or should have known of the harassment but failed to take actions reasonably calculated to end the mistreatment and offensive conduct." *Toms River*, 915 A.2d at 540.

The parties do not dispute that M.W. is a qualified individual with a disability. Rather, the crux of the dispute is whether Plaintiffs G.W. and K.W. were deprived of something they otherwise were entitled to because of M.W.'s disability.[4] However, Plaintiffs may only pursue claims in which they have standing in their own right. The Third Circuit has held that the right to proceed *pro se* does not give non-lawyer parents the right to represent their children in proceedings before a federal court. *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) ("[A] non-lawyer [parent] appearing *pro se* [is] not entitled to play the role of attorney for his children in federal court"); *see also Collinsgru*, 161 F.3d at 231. Although IDEA, discussed in Section A, *supra.*, affords parents rights that are separate and independent from their children, Section 504, the ADA, and NJLAD do not. *Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x 833, 836 (3d Cir. 2009) (finding that parents could not "litigate the NJLAD, procedural due process, or common law counts alleged in their . . . [c]omplaint" and upholding the district court's finding that the injuries alleged simply were not personal to [the parents]). Because the parents do not have an individual right of action to redress M.W.'s alleged injuries under Section 504, the ADA, or NJLAD, RBOE's motion to dismiss is granted and Counts XI, XII, and XIII are dismissed.

## V.     CONCLUSION

For the reasons stated above, State Defendants' Motion to Dismiss (ECF 66, State Defs. MTD) is **GRANTED** and RBOE's Motion to Dismiss (ECF 70, RBOE MTD) is **GRANTED**.

---

[4] As discussed in footnote 2, *supra.*, Plaintiffs G.W. and K.W. may proceed *pro se* only with respect to their own claims. The minor child M.W. is unrepresented at this juncture.

Plaintiffs' Complaint (ECF 2, Compl.) is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Jessica S. Allen, U.S.M.J.
       Parties